# IN THE COURT OF APPEALS OF IOWA

No. 20-0553
Filed June 3, 2020

IN THE INTEREST OF C.C.,
Minor Child,

J.T., Mother,
        Appellant.

_____

Appeal from the Iowa District Court for Tama County, Casey D. Jones, District Associate Judge.

A mother appeals the termination of her parental rights to her daughter. **AFFIRMED.**

Geneva L. Williams, Cedar Rapids, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Deborah M. Skelton, Walford, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., May, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**VOGEL, Senior Judge.**

A mother appeals the termination of her parental rights to her daughter, C.C., born in September 2015. Because of the child's physical and cognitive disabilities and the mother's inability to provide the diligent care this child needs, we affirm the juvenile court's order of termination.

C.C. came to the attention of the Iowa Department of Human Services (DHS) shortly after her birth because of her medically fragile condition and the mother's inability to meet the child's critical needs.[1] C.C. was hospitalized for the first fifteen months of her life with cognitive, digestive, and cardiac issues. She was eventually moved to her mother's care; however, concerns began to arise when the mother failed to take C.C. to scheduled medical appointments, follow medical advice, and tend to C.C.'s critical needs. As a result, C.C. was hospitalized multiple times. In October 2018, at age three, she was removed from the mother's care, hospitalized for one month, and then placed in foster care. Upon the stipulation of all parties, C.C. was adjudicated a child in need of assistance (CINA) on December 19, 2018. At the April 17, 2019 dispositional hearing, the court adopted the recommendations of the DHS, which included having the mother complete a psychological evaluation with a cognitive component and any recommendations stemming from the evaluation. She was also to attend C.C.'s medical appointments, cooperate with C.C.'s medical team, and carry out the team's regime of C.C.'s required care. A range of services were outlined and provided for the mother to achieve reunification.

---

[1] At the time of the termination hearing, her ongoing medical needs included a special diet delivered through a G-tube.

After more than sixteen months of services offered, but with little progress being made, the State moved to terminate the mother's parental rights. A hearing was held on February 24 and March 2, 2020, after which the juvenile court found clear and convincing evidence to grant the State's petition. The mother appeals.[2]

We review termination proceedings de novo, giving weight to but not being bound by the juvenile court's findings. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Our primary concern is the best interest of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

The mother asserts the State failed to prove the last element of Iowa Code section 232.116(1)(f) (2019),[3] namely that C.C. could not be returned to her at the present time. The thrust of her argument is that she was not given the opportunity to demonstrate her ability to adequately provide for C.C.'s medical needs. She notes the inadequacy of the three formal training sessions provided to her: a University of Iowa Hospitals and Clinics apartment experience from November 6 to 8, 2018; a Gastrostomy Cares Teaching on March 28, 2019; and a Central Line Cares review on July 18, 2019. Although at first blush this may seem inadequate,

---

[2] The father's parental rights were also terminated. He does not appeal.

[3] Iowa Code section 232.116(1)(f) states:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

the detail notes describing these training sessions all comment on the inability of the mother to process and retain the procedures necessary to be able to carry them out unsupervised. Initially, a manual was provided to the mother that included printed instructions and diagrams depicting the use of various equipment and supplies. Later, a hands-on apartment experience was set up to teach the mother how to properly care for C.C's constant medical needs. The apartment experience is normally only a one-day event, but because the mother was not learning as anticipated, it was extended to two days, which included overnight care. Several nurses who supervised the experience wrote summaries of their interaction with the mother and noted that the mother was often asleep or busy when C.C. required care, resistant to following instructions, impatient with C.C.'s reactions, and unable to complete the care sessions. She needed to be reminded time and again as to what was required for safe, hygienic care with little room for error in treating a child with such complex medical needs. The physicians who participated in the apartment experience wrote, "[S]ignificant safety concerns seem to exist regarding [the] mother's administration of medications, feeds and handling of her central line during this apartment experience." The April 17, 2019 dispositional order continued C.C.'s out-of-home placement "because concerns remain over the mother's ability to safely take care of the child's extensive medical care." No indications of improvement were noted in the supervised visits that occurred, and the DHS worker testified the mother was "unsuccessful in—with demonstrating that she can take care of even her own basic needs, and then on top of that, to take care of [C.C.]'s basic needs." The mother admitted during the termination hearing that C.C.'s physician at the University of Iowa Stead Family

Children's Hospital bent over backwards to try to help her with C.C. Nevertheless, she acknowledged she remained confused as to C.C.'s proper care. We agree with the juvenile court that throughout these proceedings, the mother "has been given multiple opportunities to demonstrate that she knows how to perform the vital, everyday procedures that keep [C.C.] safe and healthy and she has failed in all of those opportunities." We find clear and convincing evidence supports the findings under Iowa Code section 232.116(1)(f) and affirm.

Next, the mother asserts the juvenile court should have granted her additional time for reunification. Under Iowa Code section 232.104(2)(b), a court may authorize a six-month extension of time if it determines "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." When given the opportunity to learn, the mother was often resistant, stating she would do things her own way if she were able to take C.C. home. After the mother was granted semi-supervised visits, the visits were quickly returned to fully supervised after it was determined C.C. ingested ethanol while being alone in the mother's care for just forty-five minutes. C.C. required hospitalization as a result of that incident. Further, the mother did not complete DHS's recommendation, as adopted by the juvenile court, that she undergo a cognitive evaluation to assess her ability to process, retain, and carry out the instructions critical to C.C.'s care. The DHS worker testified that additional "time is irrelevant" because simply providing more time would not make the mother more capable to do the things that were beyond her capacity to grasp and maintain at a skill level to keep C.C. safe. The court found the mother showed little improvement in the areas of feeding and proper cleaning techniques and "there does not appear

to be any indication that the mother will improve in these areas within an additional reasonable amount of time." While "a parent's intellectual disability 'alone is not sufficient grounds for termination,'" such a disability "can be a relevant consideration when it affects the child's well-being." *In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018) (quoting *In re A.M.*, 843 N.W.2d, 100, 111 (Iowa 2014)). We agree and affirm the juvenile court's denial of additional time.

Lastly the mother asserts termination of her parental rights is not in C.C.'s best interests. In doing so, the mother conflates Iowa Code section 232.116(2) and (3).[4] Nonetheless, we address her contention that her bond with C.C. is strong. The State asserts that bond has weakened in part because of several examples of the mother's inappropriate statements and behavior in C.C.'s presence. The record includes some of the mother's admitted outbursts in front of C.C. that caused C.C. confusion and trauma, which does not reflect a strong bond. Moreover, the mother missed more than one-half of the visits she was afforded with C.C. In January 2020, just prior to the termination hearing, C.C. was hospitalized for fourteen days and the mother failed to visit her even one time.

Although the juvenile court noted the mother's love for her daughter, the extent of any bond they may share is "unclear." Further the court stated it could not "gamble with [C.C.]'s life that her mother has the ability to properly care for

---

[4] *Compare* Iowa Code § 232.116(2) ("[T]he court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."), *with id.* § 232.116(3)(c) ("The court need not terminate the relationship between the parent and the child if the court finds . . . that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.").

her," and it concluded it was in C.C.'s best interests to terminate the mother's parental rights. We agree. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (stating that a child's safety and the child's need for a permanent home are the "defining elements" in determining a child's best interests).

Agreeing with the juvenile court that the statutory grounds to support termination were proved by clear and convincing evidence, additional time was not warranted, it is in the child's best interests to terminate parental rights, and no strong parental bond hinders termination, we affirm.

**AFFIRMED.**